# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 08-243V

Filed: April 28, 2015

* * * * * * * * * * * * * * * *
ERIN PATRICIA O'NEILL,

                          Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

                          Respondent.

* * * * * * * * * * * * * * * *

TO BE PUBLISHED

Special Master Hamilton-Fieldman

Attorney Hourly Rate; Attorney Hours;
Paralegal Hourly Rate; Expert Costs;
Legal Research Service Fees.

Anne Carrión Toale, Maglio, Christopher and Toale, Sarasota, FL, for Petitioner.
Darryl R. Wishard, United States Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

       In this case under the National Vaccine Injury Compensation Program ("the Program"), Erin Patricia O'Neill ("Petitioner") seeks, pursuant to 42 U.S.C. § 300aa-15(e),[2] an award for attorneys' fees and litigation costs incurred in the course of Petitioner's attempt to obtain Program compensation.  After careful consideration, the undersigned has determined to **grant the request in part, and deny it in part**, for the reasons set forth below.

---

[1] As provided by Vaccine Rule 18(b), each party has 14 days within which to file a motion for redaction "of any information furnished by that party (1) that is trade secret or commercial or financial information and is privileged or confidential, or (2) that are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).  In the absence of such motion, the entire decision will be available to the public.  *Id.*

[2] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2006).  Hereinafter, for ease of citation, all § references will be to 42 U.S.C. (2006).

# I

# PROCEDURAL BACKGROUND

On April 7, 2008, Petitioner filed a Petition alleging that she developed transverse myelitis and multiple sclerosis after receiving the meningococcal vaccination on July 18, 2007. Petition ("Pet") at 1-6, ECF No. 1.  Petitioner was represented by Altom M. Maglio of the Maglio, Christopher & Toale ("MCT") law firm.  Pet. at 5, ECF No. 1.

Special Master Dee Lord held an entitlement hearing in San Antonio, Texas, on October 19, 2010.  Minute Entry, Oct. 20, 2010.  Two attorneys from MCT attended this hearing to represent Petitioner.  Tr. 3.

The case was thereafter settled during mediation and, on June 11, 2012, the parties filed a stipulation memorializing their agreement.  Stipulation, ECF No. 60.  On June 12, 2012, Special Master Lord issued a decision awarding compensation.  Decision, ECF No. 61.  The case was then reassigned to Chief Special Master Campbell-Smith on September 10, 2012.  Notice, ECF No. 64.

On September 11, 2012, Petitioner filed an "Application for Attorneys' Fees and Costs," which was later stricken, requesting $107,321.15 in attorneys' fees, $51,028.07 in attorneys' costs, and $2,380.92 in personal costs undertaken by the Petitioner.  Stricken (pursuant to order filed on September 25, 2012), ECF No. 65.  Respondent filed "Respondent's Objections to Petitioner's Application for Attorneys' Fees and Costs" on September 19, 2012.  Resp't's Opposition, ECF No. 66.  Respondent objected to Petitioner's attorneys' fees and costs, but did not object to Petitioner's request for $2,380.92 in personal costs.  *Id.*  On September 24, 2012, Petitioner filed a "Motion for Leave to Withdraw Application for Attorney's Fees without Prejudice to Refile."  Motion, ECF No. 67.  The motion was granted on September 24, 2012, and a filing deadline of January 14, 2013 was set for the Revised Application for Attorneys' Fees and Costs.  Order, ECF No. 68.  Petitioner subsequently filed a "Motion for Enlargement of Time to File Application for Attorney's Fees."  Motion, Jan. 14, 2013, ECF No. 69.  The motion was granted and the new deadline for filing the revised application for fees was set for March 15, 2013.  Scheduling Order (Non-PDF), Jan. 25, 2013.  The case was reassigned to the undersigned on March 4, 2013.  Order, ECF No. 70.

In the "Revised Application for Attorneys' Fees and Costs," Petitioner requested $139,704.45 in attorneys' fees, based on $275-$361 per hour for attorneys and $75-$135 for paralegals.  She also requested $65,428.71 in attorneys' costs.  Pet'r's Revised Application for Attorneys' Fees and Costs and corresponding Memorandum of Law and Fact ("Pet'r's App. and Memo"), ECF No. 71 at 1.  There was no change to the $2,380.92 in personal costs that Petitioner had initially requested.  *Id.*

Respondent filed a response to Petitioner's revised application on April 10, 2013, objecting to certain items in Petitioner's revised fees application.  Resp't's Opposition to Pet'r's Revised Application for Attorneys' Fees and Costs ("Resp't's Opposition"), ECF No. 73.

On April 17, 2013, Petitioner filed a reply in support of the revised application that provided additional information to support the Petitioner's attorneys' fees and costs. Pet'r's Memorandum in Support of Pet'r's Revised Application for Attorneys' Fees and Costs ("Pet'r's' Memorandum"), ECF No. 74. Finally, on April 19, 2013, Respondent filed a response to Petitioner's reply. Resp't's Reply to Pet'r's Reply Memorandum in Support of Her Revised Application for Attorneys' Fees and Costs ("Resp't's Reply"), ECF No. 75. The matter is now ripe for adjudication.

## II

## LEGAL STANDARD FOR AWARDING ATTORNEYS' FEES AND COSTS

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. 42 U.S.C. § 300aa-15(e) (1). This is true even when a petitioner is unsuccessful on the merits of the case, if the petition was filed in good faith and with a reasonable basis. *Id.*; *Sebelius v. Cloer*, 133 S.Ct. 1886, 1893 (2013)("Cloer III"). "The determination of the amount of reasonable attorneys' fees and costs is within the special master's discretion." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

The burden is on the petitioner to demonstrate that the attorneys' fees claimed are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 211 (2009); *Rupert v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate reasonableness applies to costs as well as attorneys' fees. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

One test of the reasonableness of a fee or cost is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *mot. for rev. denied* (Fed. Cl. Dec. 10, 2009), *aff'd*, 406 Fed. Appx. 479 (Fed. Cir. 2011); *Sabella*, 86 Fed. Cl. at 201. In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original), quoting *Hensley*, 461 U.S. at 433-34.

III

# DISPUTED ISSUES

## A. Hourly Rates for Attorneys

Petitioner seeks between $250 and $361 per hour, for all MCT attorneys, whether based in Florida or Washington D.C. *See generally* Pet'r's App and Memo.  Respondent argues that the local hourly rates that Petitioner seeks for the MCT attorneys working in Sarasota, Florida and the forum rate that Petitioner seeks for the MCT attorneys working in the forum (Washington, D.C.) are not reasonable.  Resp't's Opposition at 6-19.  Respondent also argues that Petitioner's request that the MCT attorneys be compensated at their full hourly rate for time spent traveling is not reasonable.  *Id.* at 22-25.

## B. Hours Spent by Attorneys

Respondent argues that the amount of time that the MCT attorneys spent on certain tasks is not reasonable.  *Id.* at 25-26.  Specifically, Respondent questions the reasonableness of the decision to have two attorneys prepare for, travel to, and attend the October 19, 2010 hearing in San Antonio, Texas, the amount of medical research that was performed by Petitioner's counsel as opposed to her expert witness, and the amount of time after the case was settled that Petitioner's counsel spent on the Fees Motion. *Id.*

## C. Rates for Paralegals

Respondent argues that the hourly rates, ranging from $75 to $135, for the MCT paralegals working in Sarasota, Florida are not reasonable.  *Id.* at 19-22.

## D. Expert Costs

Petitioner has requested reimbursement of fees for her medical expert, Dr. Tornatore, and her life care and vocational planner, Mr. Patrick.  Respondent argues that the expert costs sought by Petitioner are unreasonable.  *Id.*  at 26-28.  Respondent questions the reasonableness of the hours expended and the hourly rate of both Petitioner's medical expert and of Petitioner's life care and vocational planner.  *Id.*

Petitioner employed the services of Wyatt Partners, experts on attorneys' fees and costs issues.  Respondent objects to the reasonableness of using expert services on the issue attorneys' fees and costs, as well as the number of hours these experts expended, and the hourly rates charged by these experts.  *Id.*

4

### E.  Legal Research Service Fees

Finally, Respondent argues that fees for LexisNexis legal research that Petitioner seeks are not reasonable.  *Id.* at 28-29.

Each of these disputed issues is discussed and resolved in the Analysis section that follows.

IV

ANALYSIS

### A.  Reasonableness of Fees Charged by MCT Attorneys

Under the Vaccine Act, the lodestar approach is utilized to make determinations regarding what constitutes reasonable attorneys' fees.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008).  When utilizing the lodestar approach, the first step is to multiply the number of hours that petitioner's attorneys could have reasonably expended on the litigation by a reasonable hourly rate.  *Id.* at 1347-48.  There may be special circumstances in a case that warrant an upward or downward departure from this initial calculation, but they are "rare" and are applied only after the lodestar calculation is complete.  *Id.* at 1348; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (indicating that there is a "'strong presumption' that the lodestar calculation is reasonable, but that 'presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'").  There are no such rare circumstances argued or applicable in this case; therefore, no departures from the lodestar calculations and analysis will apply.

#### 1.  *Reasonable Hourly Rates for the MCT Attorneys:  Local Rate for Attorneys in Sarasota, Florida and Forum Rate for Attorneys in Washington, D.C.*

Petitioner seeks between $250 and $361 per hour for all MCT attorneys, whether based in Florida or Washington D.C. *See generally* Pet. App. and Memo.  Respondent objects to the hourly rate charged by the MCT attorneys working from the firm's offices in Sarasota, Florida and Washington, D.C.  Resp't's Opposition at 6-19.  To support the reasonableness of the hourly rates charged by the MCT attorneys, Petitioner submitted affidavits from local attorneys with similar experience[3]; affidavits showing that the rates billed are the same as those billed to non-vaccine clients; decisions showing rates awarded by other special masters in vaccine cases[4]; and

---

[3] Affidavits were filed as Appendices.  These affidavits indicated that attorneys who were barred between 1990 and 1992 were billing between $295 and $425.

[4] *Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2011 WL 6957598 (Fed. Cl. Spec. Mstr. Dec. 16, 2011), *mot. for rev.* 105 Fed. Cl. 148 (Fed. Cl. June 4, 2012), *remanded to* 2012 WL 4010485 (Fed. Cl. Spec. Mstr. Aug. 23, 2012); *Morrow v. Sec'y of Health & Human*

local case law on fees decisions. *See generally* Appendix to Memorandum of Law and Fact in Support of Petitioner's Revised Application for Attorney's Fees and Costs ("Appendix"), Mar. 7, 2013. This information was considered when making a decision regarding the reasonableness of the MCT attorneys' hourly rates.

A "reasonable hourly rate" is equivalent to the "prevailing market rate" in the relevant community, which is the prevailing rate that is charged "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). The petitioner bears the burden of providing evidence to support the reasonableness of the attorney's hourly rate. *Id.* The special master will look to the totality of the evidence submitted by the petitioner, and the special master's own judgment and experience can be brought to bear when determining whether an hourly rate is reasonable. *King ex rel. King v. Sec'y of Health & Human Servs.*, No. 03-584V, 2010 WL 5470787, at *4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010); *Broekelshen v. Sec'y of Health & Human Servs.,* No. 07-137V, 2008 WL 5456319 (Fed. Cl. Spec. Mstr. Dec. 17, 2008). Affidavits from other attorneys may be helpful in determining a reasonable hourly rate, but the weight given to the affidavits submitted by other attorneys is tempered by the knowledge that the attorneys who submitted the affidavits are not disinterested observers. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *27 (Fed. Cl. Spec. Mstr. June 12, 2009), *aff'd*, 634 F.3d 1283 (Fed. Cir. 2011), *order corrected*, 99-697V, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013). The attorneys who submitted affidavits have a personal interest in maintaining high fees in the legal profession, even if they do not litigate cases within the Vaccine Program. *Id.* Decisions by courts regarding what constitutes a reasonable hourly rate may also be helpful, but even decisions by other special masters are not binding on the presiding special master when making a determination regarding what constitutes a reasonable hourly rate. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 483 (Nov. 19, 1991), *remanded to* 1992 WL 26662 (Fed. Cl. Spec. Mstr. Jan. 2, 1992), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993).

Likewise, showing that the rate charged is the same as the rate the attorney bills non-vaccine clients is relevant but not dispositive. *Masias*, 2009 WL 1838979, at *11 (quoting *Caron v. Billings Police Dep't,* 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market. But there is such a thing as a high charger and low charger, and the district judge is supposed to use the prevailing market rate for attorneys of comparable experience, skill and reputation, which may or may not be the rate charged by the individual attorney in question.").

The reasonable hourly rate should generally be based on the forum rate. *Avera v. Sec'y of* 515 F.3d at 1349; *see also Davis Cnty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. V. U.S. E.P.A.,* 169 F.3d 755 (D.D.C. Feb. 26, 1999). The Court of Federal Claims is

_____

*Servs.*, No. 09-588V, 2012 WL 3744790 (Fed. Cl. Spec. Mstr. July 31, 2012); *Burgess v. Sec'y of Health & Human Servs.*, No. 07-258V, 2011 WL 159760 (Fed. Cl. Spec. Mstr. Jan. 3, 2011); *Gruber v. Sec'y of Health & Human Servs*, No. 00-749V, 2009 WL 2135739 (Fed. Cl. Spec. Mstr. June 24, 2009), *vacated on other grounds*, 91 Fed. Cl. 773 (2010).

located in Washington, D.C. and has exclusive jurisdiction over cases brought under the Vaccine Act; therefore, the relevant forum in vaccine cases is always the District of Columbia regardless of the location of the hearing or the other portions of the case.  *Avera,* 515 F.3d at 1353 (Rader, J., concurring).

There is an exception to the forum rule in cases where the majority of the attorneys' work is performed outside of the forum, where there is a "very significant difference" in compensation between the forum rate and the local rate, and where the forum rate is higher than the local rate. *Id.* at 1349.  In such a situation, the reasonable hourly rate for the attorneys' fees award should be calculated utilizing the lower local rate to prevent overcompensation.  *Id.*

In the present case, the local rates applicable in Sarasota, Florida, where MCT's primary offices are located, are significantly lower than those applicable in the forum.  As the bulk of the work in this case performed by the Florida-based attorneys was performed in Florida, the lower, local rates apply to that work.

### a. Local Rate:  Calculating a Reasonable Hourly Rate for MCT Attorneys Working from the Firm's Office in Sarasota, Florida

The hourly rates that Petitioner seeks for the MCT attorneys working in Sarasota, Florida are based on a local hourly rate.  Pet'r's' Memorandum at 8-11.  MCT did not seek the forum rate for its Florida attorneys on this case, but only the local rate; Petitioner seeks the same rate(s) for all of her attorneys based in Florida.  *See* Pet'r's App. Ex. A.

Each of the attorneys involved in this case who are based in Sarasota, Florida have at least seventeen years of personal legal experience and have previously litigated cases in the Vaccine Program.[5]  Appendix to Memorandum of Law and Fact in Support of Petitioner's Revised Application for Attorney's Fees and Costs at 44, 46, 48, 56, 58, Mar. 7, 2013.  Affidavits from other attorneys working in Sarasota, Florida, submitted by Petitioner, support the reasonableness of the hourly rate charged by the MCT attorneys.  The other special masters' determinations regarding reasonable local rates for attorneys who are working in the MCT office in Sarasota, Florida and local decisions regarding attorneys' fees were also helpful in informing the undersigned's decision.  Furthermore, the undersigned considered the fact that the MCT firm charged non-vaccine clients the same or higher rates.

Respondent objects to the local rates charged for the work done by the MCT attorneys at the firm's office in Sarasota, Florida.  Resp't's Opposition at 9-14.  Respondent contends that the local rates that Petitioner seeks for those attorneys are not reasonable and should be reduced.[6]  *Id.*

---

[5] The attorneys from the MCT office that is located in Sarasota, Florida who were involved in this case are Altom M. Maglio ("Mr. Maglio"), Jennifer Anne Gore Maglio ("Ms. Maglio"), Anne Carrión Toale ("Ms. Toale"), Diana L. Stadelnikas ("Ms. Stadelnikas"), and F. John Caldwell, Jr. ("Mr. Caldwell").

[6] Respondent argues that, "a reasonable hourly rate for Mr. Maglio and Ms. Toale is $250.00/hour for 2008-2010, $260.00/hour for 2011, $265.00/hour for 2012, and $268.00[/hour] for 2012."  Resp't's Opposition at 14.  Respondent asserts that for Ms. Maglio "a reasonable

at 6.  Petitioner responds that the information submitted by Respondent from a website for an attorney who is based in Sarasota, Florida advertising a rate of $235.00 per hour is not a reliable indicator of a reasonable local rate because the advertisement indicates that the attorney's rates "are far below standard rates."  Pet'r's' Memorandum at 9.  Petitioner also argues that Respondent inaccurately characterized what constitutes a reasonable local rate for attorneys practicing in Sarasota, Florida based on the Florida Bar publication titled, "Results of the 2012 Economic and Law Office Management Survey."  *Id.* at 10.  Petitioner contends that the rate from the website of the attorney in Sarasota, Florida and the rates from the Florida Bar publication both support Petitioner's contention that the local rates for the MCT attorneys in Sarasota, Florida are reasonable.  *Id.*  The undersigned agrees with these contentions.

Three special masters have found the MCT 2008-2010 claimed rate of $275 per hour to be reasonable.  Chief Special Master Vowell so held in *Gruber.  Gruber,* 2009 WL 2135739, at *7.  Special Master Lord followed suit in *Burgess.  Burgess,* 2011 WL 159760, at *1.  In *Morrow,* Special Master Moran held that "extensive and persuasive documents show[ed] that the hourly rate that [Ms. Toale] requested for her work in Sarasota, Florida was reasonable." *Morrow,* 2012 WL 3744790.  Special Master Millman awarded the increased rate of $300 per hour for hours worked in 2011 in a case in which Respondent objected to MCT's hourly rates but did not seek review of that decision.  *Woods,* 2012 WL 2872290, at *8.

Based on the totality of the evidence submitted by Petitioner, including affidavits from local attorneys, local fees decisions, and special masters' fees decisions determining the reasonableness of the local rates that were charged for the work performed by the attorneys working in the MCT office in Sarasota, Florida, and the undersigned's personal experience within the Vaccine Program, the undersigned finds that it is appropriate for the MCT attorneys to be awarded their full hourly rate of $275.00 per hour for hours billed in 2008-2010 and $300.00 per hour for hours billed in 2011-2013.

### b. Forum Rate: Calculating a Reasonable Hourly Rate for Attorneys Working from the MCT Office Located in Washington, D.C.

Respondent objects to the forum rate that Petitioner seeks for the MCT attorneys who are working in Washington, DC.  Respondent's Objections to Petitioner's Revised Application for Attorneys' Fees and Costs at 14-19.  Respondent contends that the forum rate of $361.00 per hour for the work performed by Isaiah R. Kalinowski ("Mr. Kalinowski") in 2012-2013 and the forum rate of $295.00 per hour for the work performed by Danielle Strait ("Ms. Strait") in 2012 is not reasonable and should be reduced.[7]  *Id.* at 14-15.

---

hourly rate is $250.00/hour for 2012 and $255.00/hour for 2013."  *Id.*  Respondent believes that for Ms. Stadelnikas and Mr. Caldwell "a reasonable hourly rate is $225.00/hour for their work in 2010 and $237.00/hour in 2012."  *Id.*

[7] Respondent argues that "a reasonable forum rate for Mr. Kalinowski is $225.00/hour for work performed in 2012, and $228.00/hour for work performed in 2013."  Resp't's Opposition at 19.  Respondent argues that a reasonable forum rate for Ms. Strait's work "in 2012 is $200.00/hour."  *Id.*

The forum rate should be utilized to calculate the reasonable hourly rate for Mr. Kalinowski and Ms. Strait because both attorneys work out of the MCT office that is located in the District of Columbia, which is the location of the United States Court of Federal Claims. *See Avera,* 515 F.3d 1343 at 1349, 1353.  Respondent questioned the legitimacy of the MCT office in Washington, D.C.  The subsequent discussion that ensued between the parties in the submitted briefs was not relevant to the parties' legal arguments regarding the reasonableness of the forum rates. *See, e.g.,* Resp't's Opposition at 14; Pet'r's' Memorandum at 11-12.  In the future, such commentary should not be included in the parties' briefs.  Although the MCT attorneys working from the firm's office in the District of Columbia utilize the service of paralegals that are physically located in Sarasota, Florida, the attorneys themselves are physically located in the District of Columbia. [8]  Pet'r's' Memorandum at 12.  It is therefore appropriate to use the forum rate when calculating the attorneys' fees utilizing the lodestar approach.

In a thoroughly researched and thoughtfully reasoned opinion from 2014, Special Master Corcoran determined that a reasonable hourly rate in Washington, D.C., ranged from $275 to $413 per hour. *See Barrett v. Sec'y of Health & Human Servs.,* No. 09-389V, 2014 WL 2505689 (Fed. Cl. Spec. Mstr. May 13, 2014).  The information provided by Petitioner in this case, including affidavits from other attorneys with similar experience regarding the hourly rates that they regularly charge clients and other decisions regarding attorneys' fees, supports the reasonableness of this range of forum rates.  Petitioner also provided an article from *The Wall Street Journal* that was published on April 10, 2013, indicating that nationwide "this year, for the first time, the average rate for associates with one to four years of experience rose to $500.00 an hour." Pet'r's Memorandum at 14.  At the time of filing, Mr. Kalinowski had eight years of legal experience and Ms. Strait had three years of legal experience, both somewhat less than the ten or more years of experience discussed in *Barrett*.  *See Barrett,* 2014 WL 2505689.  Appendix to Memo at 74, 76.  However, prior to working at MCT, both attorneys gained experience with the Vaccine Program through their work as law clerks in the Office of Special Masters.[9]  *Id.*

Based on the information provided and the undersigned's personal experience within the Vaccine Program, the undersigned finds that it is appropriate for the MCT attorneys practicing from the firm's office in Washington, D.C. to be awarded the following hourly rates: $325.00 per

---

[8] MCT maintains an office in Washington, D.C. that is staffed by Mr. Kalinowski and Ms. Strait.  Pet'r's Memorandum at 11-12.  According to Petitioner, "MCT leases what are characterized as 'private offices' for both DC attorneys."  Petitioner indicated that the MCT offices were not "virtual offices" or "co-working" spaces.  *Id.* at 12.

[9] *See Robertson v. Sec'y of Health & Human Servs.*, 95-187V, 1997 WL 338601 (Fed. Cl. Spec. Mstr. June 4, 1997) (awarding an attorney who served as a law clerk under the Vaccine Program for two years a higher rate than awarded most attorneys that are new to the Program). *See also Ramsey v. Sec'y of Health & Human Servs.,* No. 07-21V, 2009 WL 3423038, at *3 (Fed. Cl. Spec. Mstr. Oct. 7, 2009) (compensating a recent law school graduate a higher rate than other new attorneys because she served as a paralegal at a firm that has many cases in the Vaccine Program while in law school).

hour for Mr. Kalinowski in 2012-2013 and $295.00 per hour for Ms. Strait in 2012. Therefore, the attorneys' fees award shall be reduced by $403.20.

### c. Travel Rate: Calculating a Reasonable Hourly Rate for Travel Time for MCT Attorneys

Petitioner seeks the MCT attorneys' full hourly rate for the time that the attorneys spent traveling for the purposes of litigating this case, and Respondent contends that this is unreasonable. Resp't's Opposition at 22-25. Respondent asserts that the MCT attorneys should be compensated at fifty percent of their hourly rate for the forty-four hours that they spent traveling. *Id.* at 22.

There is not a bright line rule regarding awarding attorneys' fees for time spent traveling. *Gruber,* 91 Fed. Cl. at 791 (quoting *Knox ex rel. Knox. v. Sec'y of Health & Human Servs.*, No. 09-33V, 1991 WL 33242, at *8) ("Each case should be assessed on its own merits, without resort to a convenient or '[f]or ease of calculation' formula to award travel time attorneys' fees."). The special master is required to assess the specific facts in each case when making a determination regarding the rate that should be awarded to attorneys for travel time. *Id.*

The Vaccine Program commonly awards attorneys half of their established billing rate for time spent traveling, but the fact that an attorney is traveling in and of itself is not determinative of the hourly rate that is appropriate under the circumstances in a case. *Scoutto v. Sec'y of Health & Human Servs.,* No. 90–3576V, 1997 WL 588954, at *5 (Fed. Cl. Spec. Mstr. Sept. 5, 1997); *LeBlanc v. Sec'y of Health & Human Servs.*, No. 90–1607V, 1995 WL 695202, at *3 (Fed. Cl. Spec. Mstr. Nov. 8, 1995); *Cain v. Sec'y of Health & Human Servs.*, No. 91–817V, 1992 WL 379932, at *3 (Fed. Cl. Spec. Mstr. Dec. 3, 1992). In *Crumbaker v. Merit Systems Protection Board*, the court determined that under a statute entitling the plaintiff to "reasonable attorneys' fees," the plaintiff's counsel was entitled to full compensation for travel time if they similarly charged all their paying clients for travel time and the travel was necessary for litigating the case. *Crumbaker v. Merit Sys. Prot. Bd.*, 781 F.2d 191, 194 (Fed. Cir. 1986), *modified*, 827 F.2d 761 (Fed. Cir. 1987), and *disapproved of by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987); *Gruber*, 91 Fed. Cl. 790-91 (citing *Crumbaker v. Merit Sys. Prot. Bd.*, 780 F.2d at 193) ("The Federal Circuit in *Crumbaker* limited full compensation for attorney travel time to cases in which plaintiffs' counsel provide proof that they regularly charge their paying clients for travel time and that the rates charged are prevailing community rates.").

However, the fact that the attorneys routinely charge their non-vaccine clients their full hourly rate for time spent traveling is not dispositive. In *Gruber*, the court noted that in some situations, in accordance with the Vaccine Act and *Crumbaker*, adequate documentation may be present to support an award of full attorneys' fees for time spent traveling, but "[e]ven an automatic 50% award may be too high for an undocumented claim, given the possibility that an attorney may use the travel time to work on another matter or not to work at all while traveling." *Gruber*, 91 Fed. Cl. at 791 (stating attorneys "should not automatically assume that it is reasonable to assess any and all travel time to a client-based destination as billable to that client."). Absent documentation of the work performed by an attorney while he or she was traveling, the attorney will not be compensated at his or her full hourly rate for travel time. *Id*. at

788.  The Court stated in *Gruber*, that "[w]hen case-related work is performed during travel, the time sheets should reflect the work performed and the hours spent performing it, with the remainder of the travel hours billed at one-half the standard hourly rate." *Id.*

The MCT attorneys' documentation of the time that they spent traveling is generic and unspecific.[10]  *See generally* Invoice to Petitioner's Revised Application for Attorneys' Fees and Costs ("Invoice") at 1-53.[11]  Therefore, an award of the attorneys' full hourly rate is not appropriate for the time that they spent traveling.  That time will be compensated at fifty percent of the hourly rates established herein.  Where the MCT billing already reflected a reduction in the hours or hourly rate for time that the MCT attorneys spent traveling, the rates were not reduced further.[12]

In some instances, the MCT attorneys billed hours in a manner that made it impossible to determine the amount of time spent traveling.  The undersigned utilized her discretion to estimate the amount of time spent traveling and reduced the hourly rate accordingly.  For example, on March 2, 2009, Petitioner's counsel billed two hours at a rate of $275.00 per hour for "[t]ravel to Georgetown University Hospital for meeting with Dr. Tornatore, meeting with Dr. Tornatore."  Invoice at 12, Mar. 7, 2013.  Dr. Tornatore's billing records do not reflect a meeting that took place on March 2, 2009.  *Id.* at 72.[13]  Therefore, that billing line item is disallowed.  On October 17, 2010, Petitioner's counsel billed 4.9 hours at a rate of $275.00/hour for "[t]ravel to hotel in San Antonio by automobile, prepare for conference with client at her home, travel by automobile from hotel to conference with client, conference with client, return by automobile from conference with client to hotel."  *Id.* at 28.  For October 17, 2010, two hours are assumed to have been spent traveling, and the hourly rate for two of the hours is accordingly reduced by fifty percent.

---

[10] For example: On February 21, 2008, Petitioner's counsel billed eight hours at a rate of $275.00 per hour for "[t]ravel to Tampa, travel from Tampa to Lubbock, TX for meeting with client and father."  Invoice at 2.

[11] On March 7, 2013, Petitioner filed a Revised Application for Attorneys' Fees and Costs and included an accompanying invoices labeled Exhibits A and B.  Since Exhibits A and B already exist as exhibits filed by Respondent, *see* ECF No. 73, the undersigned will refer to all invoices accompanying Petitioner's application by the independent pagination scheme designated by the PDF document.

[12] For example, on October 20, 2010, Petitioner's counsel billed 3.5 hours for "Travel by airplane from San Antonio, Texas to Tampa, Florida, travel by taxi from Tampa to Sarasota (half of return from San Antonio billed to O'Neill case – no work on other cases completed during the time billed)."  Invoice at 29, Mar. 7, 2013.  Petitioner's attorney already reduced the travel time by fifty percent for October 20, 2010 and, therefore, no further reduction was made.

[13] Some of the Invoice is paginated and other parts are not.  The page numbers cited correspond with the pagination of the complete PDF document, as paginated by the PDF software.

In sum, the MCT attorneys were awarded half of their hourly rate for time spent traveling when they did not provide documentation regarding work that was performed during that time. The reductions to the MCT attorneys' hourly rates for time spent solely on travel resulted in a reduction of the award of attorneys' fees by $6,606.25

### 2.  Reasonable Hours Expended by the MCT Attorneys

Respondent contends that the number of hours that MCT attorneys expended on litigation was not reasonable.  Resp't's Opposition at 25-26.  Specifically, Respondent questions the reasonableness of the decision to have two attorneys prepare for, travel to, and attend the October 19, 2010 hearing in San Antonio, Texas, the amount of medical research that was performed by Petitioner's counsel as opposed to her expert witness, and the amount of time after the case settled that Petitioner's counsel spent on the Fees Motion.  *Id.*

Under the Vaccine Act, the petitioner should be compensated only for hours that the attorneys working on the case "reasonably expended" on the litigation.  *Carrington ex rel. Carrington v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 319, 323 (Fed. Cl. 2008) (quoting *Hines on Behalf of Sevier v. Sec'y of Dep't of Health & Human Servs.*, 22 Cl. Ct. 750, 754 (Apr. 2, 1991)).   In assessing the number of hours reasonably expended, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Riggins,* 2009 WL 3319818, at *4 ("Attorneys are not entitled to compensation for performing work that is not necessary.").  Furthermore, an attorney should not bill hours for tasks that could be efficiently delegated to an individual who charges a lower hourly rate than the attorney, for example, a paralegal or even a secretary. *Brown v. Sec'y of Dep't of Health & Human Servs.*, No. 09-426V, 2012 WL 952268, at * 7 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (quoting *Riggins v. Sec'y of Health & Human Servs.*, No 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009) ("If counsel elects to have an attorney perform [clerical] activities, it is in counsel's discretion. However, the time spent by an attorney performing work that a paralegal can accomplish should be billed at a paralegal's hourly rate, not an attorney's."); *Doe ex rel. Estate of Doe v. Sec'y of Health & Human Servs.*, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010).  Where the use of multiple attorneys is excessive and results in efforts being duplicated, the number of hours should be reduced.  *Soto v. Sec'y of Health & Human Servs.*, No. 09–897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (indicating that the attorney hours should be reduced because "having so many attorneys work on one case caused duplicative review and unnecessary meetings").  However, in *English*, the special master found that it was reasonable for two attorneys to work on the case.  *English v. Sec'y of Health & Human Servs.*, No. 01-61V, 2006 WL 3419805, at *12 (Fed. Cl. Spec. Mstr. Nov. 9, 2006).  The special master found the total number of hours billed by the two attorneys, 275, to be reasonable.  *Id.*  (Quoting *Holton v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 391, 396–97 (June 21, 1991)) ("[T]he undersigned is not inclined to determine how or why attorneys divide their workload, as the Court of Federal Claims has found that it is reasonable for two attorneys to 'collaborate ... in order to assure that the litigation proceed[s] in a timely fashion,' and that a special master should not substitute his own judgment for how to conduct the litigation of a petitioners [sic] case.").

While some vaccine cases are particularly complex, litigation of cases within the Vaccine Program is typically simpler than other comparable forms of litigation. *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1385 (Fed. Cir. 2011) ("The Vaccine Act provides petitioners with an alternative to the traditional civil forum, applies relaxed legal standards of causation, and has eased procedural rules compared to other federal civil litigation."). The complexity of the particular case is properly reflected in the "number of hours expended" portion of the lodestar calculation, rather than in calculating the reasonable hourly rate. *Id.*

To facilitate determinations regarding the reasonableness of the time that an attorney spent on litigation, the Vaccine Guidelines instruct attorneys that "[c]ontemporaneous time records that indicate the date and specific character of the service performed, the number of hours (or fraction thereof) expended for each service, and the name of the person providing such service." *See Guidelines for Practice Under the National Vaccine Injury Compensation Program* (Office of Special Masters, United States Court of Federal Claims, Rev. Ed. Nov. 2004) Section XIV.A.3 at 19.[14] When an attorney is documenting time spent working on a case, "[e]ach task should have its own line entry indicating the amount of time spent on that task" because "[s]everal unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request." *Id.*

The special master is not required to perform a line-by-line analysis of the fee application when determining the number of hours that were reasonably expended on litigation. *See Sabella,* 86 Fed. Cl. at 206. It is within the special master's discretion to reduce the number of hours by a percentage of the amount charged, rather than making a line-by-line determination regarding the reasonableness of the charges. *Id.*

### a. Reasonableness of Hours MCT Attorneys Spent Preparing for, Traveling to, and Attending Hearing in San Antonio, Texas.

Respondent objects to the number of attorney hours that Petitioner seeks in conjunction with the entitlement hearing. Resp't's Opposition at 25. Respondent argues that it was unreasonable for Petitioner to have two attorneys, Mr. Maglio and Ms. Toale, prepare for, travel to, and attend the entitlement hearing that was held in San Antonio, Texas on October 19, 2010. *Id.* Petitioner contends that the decision to send two attorneys to the entitlement hearing "was appropriate, efficient, and reasonable." Pet'r's Memorandum at 21. Petitioner indicates two attorneys attended the hearing due to the complicated medical issues and substantial amount of damages involved and indicates "[e]ach attorney participated in the hearing, questioning different witnesses and arguing different disputed issues." *Id.* Respondent contends that "[t]here was nothing unusual about this case that would warrant the need for two attorneys." Resp't's Opposition at 25.

Where the use of multiple attorneys is excessive and results in the duplication of efforts, the number of hours should be reduced. *Sabella*, 86 Fed. Cl. 201 at 210. It is reasonable for a

---

[14] New *Guidelines for Practice Under the National Vaccine Injury Compensation Program* were published on May 28, 2014. A similar citation can be found in at the new version at *Guidelines for Practice Under the National Vaccine Injury Compensation Program* (Office of Special Masters, United States Court of Federal Claims, Rev. Ed. May 28, 2014) Section X B.1.b. at 68.

special master to deny compensation to a second attorney, when the case could have been effectively litigated utilizing only one attorney. *Soto,* 2011 WL 2269423, at *6. There may however be cases where the presence of a second attorney is warranted based on the unique circumstances of the case. *English,* 2006 WL 3419805, at *12. While the number of attorneys used by the respondent is one factor that may be a relevant consideration when making a determination regarding the reasonableness of the number of attorneys utilized by the petitioner, this factor alone is not dispositive. The burden is on the petitioner to demonstrate that the decision to use more than one attorney was reasonable. *Sabella*, 86 Fed. Cl. 201 at 211.

Petitioner's decision to designate one attorney to present the case-in-chief and another to cross-examine Respondent's expert is not an unreasonable litigation strategy, and Respondent did not provide any evidence indicating that the attorneys failed to allocate tasks efficiently or that there was a duplication of efforts. The fact that Respondent "only had one attorney prepare for and attend the hearing" is informative but not dispositive regarding the reasonableness of Petitioner's decision to utilize two attorneys. Resp't's Opposition at 25.

Based on the undersigned's experience, the number of hours expended by Petitioner's attorneys, preparing for, traveling to, and attending the entitlement hearing, are reasonable and the undersigned declines to reduce the number of hours as requested by Respondent.

### b. Reasonableness of the Hours Spent on Medical Literature Research Performed by MCT Attorneys

Under the circumstances in this case, Respondent objects to the approximately twenty-five hours that the MCT attorneys spent on medical literature research. Resp't's Opposition at 25-26. Petitioner contends that the number of hours that the MCT attorneys spent on medical literature research were reasonable and argues that it would be improper for the attorneys to leave review of the medical literature solely to a medical expert. Pet'r's Memorandum at 22. Petitioner asserts that "no matter how qualified and specialized an expert witness is on a topic, there is relevant medical and scientific literature on the topic of which the expert is unaware" and that "MCT attorneys are experienced in hunting down relevant medical literature of which even experts on the topic are unaware." *Id.*

Attorneys representing petitioners in the Vaccine Program are expected to possess a general understanding of the petitioners' medical condition, but it is the medical expert who is primarily responsible for identifying the relevant medical literature. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *26 (Fed. Cl. Spec. Mstr. July 25, 2011) *review denied*, 2011 WL 6292218 (2011) ("[W]hile it is important for counsel to read the medical literature to familiarize himself for purposes of developing the case and questioning witnesses, it is the expert that is in the best position to identify the relevant literature."). Most attorneys do not possess the requisite qualifications or skills that are needed to efficiently and effectively conduct the type of medical research which is required to put forth an expert opinion on causation in a vaccine case. *Hammitt v. Sec'y of Health & Human Servs.*, 07-170V, 2011 WL 1827221, at *5 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). It is, however, permissible for an attorney to assist a medical expert who is retained by the petitioner in a vaccine case "by offering supervision, conducting research for the expert, or even by drafting portions of his or her report." *Hocraffer*, 2011 WL 3705153, at *27 (quoting *Gruber*, 91 Fed. Cl. at 792).

14

The number of hours spent conducting medical literature research for which an attorney representing a vaccine petitioner can be compensated is subject to the requirement that the effort expended and hours spent on the research must be reasonable. *See Warfle ex rel. Guffey v. Sec'y of Health & Human Servs.*, 05-1399V, 2012 WL 4845635, at *29-30 (Fed. Cl. Spec. Mstr. Sept. 21, 2012). It is reasonable, in complex litigation, for an attorney to spend time researching medical literature, supervising an expert, and doing research for an expert. *Gruber,* 91 Fed. Cl. at 792-93. After the petitioner's medical expert has identified the medical literature that is relevant to a case, it is reasonable for the petitioner's attorney to review the literature and develop a familiarity with the literature to the extent necessary to effectively litigate the petitioner's case. *Hocraffer*, 2011 WL 3705153, at *27.

From 2008 to 2012, the MCT attorneys spent a reasonable amount of time locating and reviewing medical literature to find information that was relevant to Petitioner's case. Petitioner also retained and billed for the services of a neurology expert, Dr. Tornatore, who spent 31.5 hours reviewing medical records, reviewing literature, and preparing a final report. Invoice at 72. Petitioner argues that the amount of time that the attorneys spent reviewing medical literature was reasonable because they needed to investigate two distinct issues, causation and prognosis. Pet'r's Memorandum at 22. Petitioner also contends that the amount of time that the attorneys spent researching medical literature was reasonable because "[t]he vaccine in the instant case was a fairly new addition to the vaccine injury table with a fairly rare adverse vaccine reaction alleged." *Id.*

The MCT attorneys spent an appropriate amount of time, when compared to the time their expert spent, locating and highlighting medical research to familiarize themselves with the relevant medical literature for the purposes of litigation. *See Warfle,* 2012 WL 4845635, at *29 (quoting *Hocraffer,* 2011 WL 3705153, at *26) ("The expert is to 'perform the primary research as ... required to provide a reliable medical opinion,' while the attorney is to 'study and understand' the identified literature 'for application to the case.'"). The MCT attorneys spent time locating and reviewing medical literature for the medical expert, in conjunction with the retained medical expert, Dr. Tornatore, who is an expert in neurology. Although the MCT attorneys' work may appear duplicative, as Dr. Tornatore performed and billed for similar activities, it is necessary for an attorney to do individual research and preparation in order to put forth the best case. *See Hocraffer*, 2011 WL 3705153, at * 27 (quoting *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308 (N.D. Cal. 1995) ("With the input from experts, large blocks of research are unnecessary; reading, understanding and preparation is essential.")

The MCT attorneys should also be compensated for the time that they spent reviewing medical literature relied upon by Dr. Tornatore in forming his opinion in this case, for the purpose of obtaining the knowledge that was required to effectively litigate Petitioner's claim. *See Warfle*, 2012 WL 4845635, at *29. Petitioner submitted over twenty pieces of medical literature,[15] and it would have been appropriate for the MCT attorneys to review all of the medical literature that was submitted.

---

[15] The medical literature submitted by Petitioner consisted of a number of scholarly articles about transverse myelitis, acute disseminated encephalomyelitis, acute myelitis, GBS, and myelitis. *See* Pet'r's Ex. 26-48.

Based on the forgoing analysis, the amount of time that Petitioner's attorneys spent on medical literature research for which they are to be compensated is appropriate.  Therefore, the undersigned determined that it is reasonable to compensate Petitioner for the hours that MCT attorneys expended doing medical literature research in this case.

### c. Reasonableness of Hours Expended by the MCT Attorneys on the Fees Motions

Respondent objects to the attorneys' fees that Petitioner seeks for the time that the MCT attorneys spent litigating attorneys' fees after the original Motion.  Resp't's Opposition at 26. Respondent argues that it was unreasonable for the MCT attorneys to spend 106 hours on attorneys' fees and costs motions after this case was settled.[16]  *Id.*  Petitioner contends that the amount of time spent revising the fee application was reasonable "[g]iven the numerous objections raised by Respondent."[17]  Pet'r's Memorandum at 23.

Under the Vaccine Act, the petitioner is generally entitled to compensation for time spent preparing applications for attorneys' fees and costs.  *Torday v. Sec'y of Health & Human Servs.*, No. 07-372V, 2011 WL 2680687, at \*3-4 (Fed. Cl. Spec. Mstr. Apr. 7, 2011).  The decision regarding whether compensation should be awarded turns on whether the time spent on the fees motion was reasonable, rather than on whether the petitioner's attorneys actually spent the amount of time claimed working on the fees motion.  *Hocraffer,* 2011 WL 3705153, at \*5. When determining whether the amount of time that the petitioner's attorneys spent on a fees motion was reasonable, two factors are relevant: (1) the tasks that were performed, and (2) the amount of time that it was reasonable for the attorneys to spend to accomplish those tasks.  *Drost v. Sec'y of Health & Human Servs.,* No. 01-502V, 2010 WL 3291933, at \*3-5 (Fed. Cl. Spec. Mstr. July 30, 2010).  There is no bright line rule regarding when an attorney's work on a case crosses the line from being reasonable to being excessive.  *Torday*, 2011 WL 2680687, at \*3. When determining the reasonableness of the amount of time that an attorney spent on a given task, the amount of time that other attorneys spend to accomplish similar tasks is relevant.  *Id.* There may, however, be cases where there are special circumstances that warrant an attorney spending more time to complete a task than an attorney would spend on that task in a typical case.  *Id.*

---

[16] Respondent notes that "[t]he attorney billing during this time period is as follows:  Ms. Toale – 55.5 hours; Ms. Maglio – 18.1 hours; Ms. Stadelnikas – 10.0 hours; Mr. Kalinowski – 9.8 hours; Mr. Caldwell – 8.5 hour; Ms. Strait – 4.1 hours."  Resp't's Opposition at 26 n 8.

[17] Petitioner indicated that "[u]ntil Petitioner was aware of the extreme breadth of Respondent's objections, Petitioner could not, in good conscience, take on the massive effort required to respond to Respondent's objections," but "once Petitioner became aware of Respondent's innumerable objections, Petitioner's counsel had to prepare a thoughtful response to each objection and argument raised by Respondent."  Pet'r's Memorandum at 24.

The special master can use his or her own experience and comparison to other cases when making a determination regarding whether the time expended on fees motions was reasonable. *Hocraffer*, 2011 WL 3705153, at *20; *Saxton*, 3 F.3d at 1520 (Fed. Cir. 1993). The Supreme Court has indicated, however, that, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (indicating that it is preferable for the litigants to reach a settlement agreement regarding attorneys' fees).

In the present case, the substantial amount of time that the MCT attorneys and staff spent researching and collecting information regarding attorneys' fees and the decision to locate and retain a fees expert resulted in what amounted to preparation for "a second major litigation."[18] The decision to allow the fees motion to evolve into a second major litigation was unreasonable. *See Chen Bou v. Sec'y of Health & Human Servs*., No. 04-1329V, 2007 WL 924495, at *20 (Fed. Cl. Spec. Mstr. March 9, 2007). Furthermore, the decision to hire a fees expert to submit a report pertaining to the fees motion was unreasonable.[19] Because the decision to hire a fees expert was not reasonable, the time that the MCT attorneys spent searching for and contacting fees experts was time that was not reasonably expended and, therefore, is not appropriate for compensation.

Based on the undersigned's review of the submitted information, some of the tasks that the MCT attorneys performed when preparing the response regarding attorneys' fees and costs was also not reasonable and, therefore, compensation for the time spent on those tasks is not appropriate.[20]

Attorneys have an obligation to stay up to date with the relevant law and should not bill for the time spent obtaining this knowledge. *Torday*, 2011 WL 2680687, at *5 ("Counsel has a continuing obligation to keep abreast of pertinent legal decisions. It is, however, reasonable for the attorneys to spend time refreshing their knowledge of 'the nuances of the case law, to

---

[18] The MCT attorneys spent considerable time researching "expert fees" and the "reasonableness of fees" as well as obtaining affidavits from local attorney's regarding fees. Furthermore, the attorneys spent a considerable amount of time locating an expert regarding attorneys' fees and costs. *See, e.g.*, Invoice at 43 (10/15/2012; DLS; "Continue research and correspondence to experts for fee schedules."1.8 hours ($300.00/hour; $540.00)). *(*10/16/2012, DLS, "continue to contact experts for fee litigation." 1.5 hours ($300.00/hour; $450.00)).

[19] *See* below, analysis of "Cost for Payment to Wyatt Partners, L.L.C. for Expert Services Regarding Attorneys' Fees and Costs."

[20] For example, on August 24, 2012, an MCT attorney billed four hours ($300.00 per hour; total charge of $1,200.00) for work that included, "discuss with staff how to document missing cost receipts; updating hourly rate documentation; review client costs and total to add to application" and on December 4, 2012, an MCT attorney billed 0.3 hours ($361.00 per hour; total charge of $108.30) for time spent to "Revise and update Resume. Add resume to file for fees expert." Invoice at 41, 44. It was not reasonable for the MCT attorneys to bill for time spent on tasks such as updating the firm's hourly rate documentation or updating the MCT attorney's résumé.

determine the applicable case, and to apply the teachings to the case at hand'." *Torday*, 2011 WL 2680687, at *6 ("[C]ounsel has an ethical duty to stay abreast of the law.  In the Vaccine world, this means reading the special masters [sic] decisions along with the decisions from the Court of Federal Claims and the Federal Circuit.").

The significant amount of time that the MCT attorneys spent researching case law regarding fees decisions[21] was not reasonably expended.  *Hocraffer*, 2011 WL 3705153, at *5 (indicating that attorneys should be compensated only for hours "reasonably" expended on litigation).

After Respondent objected to Petitioner's initial application for attorneys' fees and costs, it was reasonable for the MCT attorneys and staff to spend time preparing a response to the objections.  Respondent's objections were extensive; therefore, the circumstances in this case warranted spending more time on the attorneys' fees motions than is typically expended.  The circumstances did not, however, warrant the excessive amount of time and effort that the MCT attorneys' expended.  Some of the tasks performed by MCT attorneys were unreasonable and the amount of time that was spent on some of the tasks was unreasonable.[22]  Furthermore, there were tasks performed by MCT attorneys that could have been more efficiently delegated to a paralegal or even a secretary.

Based on the unreasonableness of some of the tasks completed by MCT attorneys and the unreasonableness of the amount of time that the MCT attorneys expended on other tasks, the amount of time billed by the MCT attorneys after August 23, 2012 will be reduced by twenty-five percent.  The reduction to the number of hours that the MCT attorneys spent on the fees motion results in a reduction of the award of attorneys' fees by $8,013.10.

### 3.   Reasonableness of the Fees for the MCT Paralegal Services

Reasonable paralegal fees are calculated using the lodestar method.  *See Dunham v. Sec'y of Dep't of Health & Human Servs.*, 18 Cl. Ct. 633 (Nov. 22, 1989).  To calculate reasonable paralegal fees, the number of hours reasonably expended by the expert on the litigation is multiplied by a reasonable hourly rate.  *Id.* at 641.  The petitioner bears the burden of demonstrating the reasonableness of the paralegal's hourly rate and the reasonableness of the number of hours expended on litigation.  *Id.*

---

[21] For example, on September 20, 2012, an MCT attorney billed 2.4 hours ($361.00 per hour; total charge of $866.40) for time spent on "Research and organize Attorneys' Fees and Costs decisions made by CSM Campbell-Smith.  Save to file," and on September 24, 2012, an MCT attorney billed 0.03 hours ($300.00 per hour; total charge of $90.00) for time spent on "Review fee decisions issues by the Chief Special Master."  Invoice at 42.  It was, however, reasonable for the attorneys to bill for some time for refreshing their knowledge of the cases and applying that knowledge to the case at hand.

[22]Their billing of over 14 hours for compiling that evidence again was unreasonable. Invoice at 42-46, Mar. 7, 2013.

Respondent objects to the hourly rate that Petitioner seeks for the MCT paralegals in Sarasota, Florida.  Resp't's Opposition at 19-22.  Respondent contends that the local rates[23] sought by Petitioner are unreasonable.[24]  *Id.*

Petitioner submitted affidavits from MCT attorneys indicating that the rates charged for the paralegal services were the same as the rates charged by the firm for paralegal services in non-vaccine cases; affidavits of local attorneys regarding paralegal rates; and local court decisions and special masters' decisions regarding the rate for paralegals in Sarasota, Florida, to support the reasonableness of the rates that Petitioner seeks for the services of the MCT paralegals.[25]  *See generally* Appendix.  Additionally, Petitioner filed an affidavit from Amy Schaffer, ACP, FRP, the President of the Paralegal Association of Florida and a paralegal working in Sarasota, Florida as evidence that supports the reasonableness of the rates Petitioner seeks for the work of MCT paralegals based in Sarasota, Florida.  *Id.* at 78.  Petitioner notes that "MCT has charged its non-vaccine injured clients the rate of $135 [per hour] for certified/registered paralegals since 2008."  Pet'r's Memorandum at 14.  Petitioner argues that Respondent mischaracterizes the information regarding paralegal fees contained in the Florida Bar publication titled, "Results of the 2012 Economic and Law Office Management Survey."  Petitioner states that the Florida Bar publication supports the reasonableness of the MCT paralegals' hourly rates.  *Id.* at 17.

Based on the information submitted by Petitioner and the undersigned's personal experience in the Program, the undersigned determines that the hourly rates charged by the MCT paralegals practicing in the firm's office in Sarasota, Florida are reasonable.  Therefore, Petitioner will be awarded the full hourly rate requested for the MCT paralegal services.

## B.  Reasonableness of Costs Accrued by Petitioner During the Course of Litigation

Respondent objects to the costs accrued by Petitioner in the course of litigation.  Respondent's Objections to Petitioner's Revised Application for Attorneys' Fees and Costs at 26-29.  Respondent contends a number of the costs were unreasonable, including the costs

---

[23] Petitioner noted that there is typically no paralegal work performed in MCT's office in Washington, D.C.; rather all of the paralegals that provide services for the attorneys working in MCT's office in Washington, D.C. are physically located in Sarasota, Florida.  Pet'r's App. and Memo at 12.  Accordingly, Petitioner seeks an hourly rate for the MCT paralegal services based on a local rate for paralegal services in Sarasota, Florida.  *Id.* at 14.

[24] The local hourly rates for 2008 to 2010 were $75 per hour for non-certified paralegals and $105 per hour for certified/registered paralegals.  Pet'r's App. and Memo at 4-5.  For 2011 to 2013, the local hourly rates were $135.00 per hour for certified/registered paralegals and $105.00 per hour for non-certified paralegals.  *Id.* at 4.

[25] Respondent's counsel indicates that he "believes that the current reasonable rate for MCT paralegals is $90.00/hour, and the current reasonable rate for MCT registered/certified paralegals is $110.00/hour."  Resp't's Opposition at 22.

associated with the medical expert, life care planner, fees expert, and the charges for legal research.  *Id.*

A petitioner can be reimbursed only for costs that were reasonably expended during the course of the litigation.  *Perreira,* 27 Fed. Cl. at 34.  ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").  The petitioner bears the burden of demonstrating that the costs incurred were reasonable, and the petitioner must provide "reasonably specific documentation" to substantiate the costs.  *Ceballos ex rel. Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Mar. 25, 2004) (quoting *Comm. Heating & Plumbing Co. v. Garrett III*, 2 F.3d 1143, 1146 (Fed. Cir. 1993).

The special master is afforded broad discretion when making determinations regarding the reasonableness of requests for reimbursement of costs accrued during the course of litigation.  *Perreira,* 27 Fed. Cl. at 34.

### 1. Reasonableness of the Expert Fees Requested by Petitioner

Respondent objects to the hourly rates and number of hours expended by the medical expert, life care planner, and fees experts that were retained by Petitioner.  Respondent's Opposition at 26-28.

Reasonable expert fees are calculated using the lodestar method.  *Simon v. Sec'y of Health & Human Servs.*, No. 05–941V, 2008 WL 623833, at *1 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).  To calculate reasonable expert fees, the number of hours reasonably expended by the expert on the litigation is multiplied by a reasonable hourly rate.  *Id.*  The petitioner bears the burden of demonstrating the reasonableness of the expert's hourly rate and the reasonableness of the number of hours that the expert spent on the litigation.  *Id.* at *2 ("[S]uch determinations of 'reasonableness' must be based on evidence provided by the petitioner for a special master's consideration."); s*ee also Chen Bou,* 2007 WL 924495, at *20 ("[T]here is no science to determining an appropriate hourly rate. What other experts are paid and what they accept, creates a range of reasonable rates.").  Only work that an expert performed that is necessary for the case is deemed reasonable and thus entitled to compensation.  *Sabella,* 2008 WL 4426040, at *28.

The special master is afforded significant discretion when making determinations regarding the reasonableness of expert fees.  *Chen Bou*, 2007 WL 924495, at * 7.  A special master can decline to award compensation to an expert if the petitioner failed to provide a sufficient explanation of the expert's qualifications or the work that the expert performed.  *See Doe,* 2011 WL 6941671, at *8.

**Reasonable Hourly Rate for Experts:**  The hourly rate charged by an expert who is retained by the petitioner is subject to the standard of reasonableness.  *Perreira,* 27 Fed. Cl. at 34. When making a determination regarding the reasonableness of an expert's hourly rate, the special master may take into consideration the following factors:  "the witness' area of expertise; the education and training required to provide him the necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the

information provided; the cost of living in the expert's geographic area; and any other factor likely to assist the undersigned in balancing the various interests in the case." *Baker v. Sec'y of Health & Human Servs.*, 99-653V, 2005 WL 589431, at *3-5 (Fed. Cl. Spec. Mstr. Feb. 24, 2005), *reconsideration denied* 2005 WL 834647 (Fed. Cl. Spec. Mstr. Mar. 23, 2005), *aff'd sub nom. Baker v. Sec'y of Health & Human Servs.*, 99-653V, 2005 WL 6122529 (Fed. Cl. June 21, 2005).

There is no bright line rule regarding compensating experts for the time that they spent traveling for a case. *Gruber* 91 Fed. Cl. at 791. But where documentation that an expert spent travel time working on the case is not provided, experts in vaccine cases are commonly compensated at half of their hourly rate for time spent traveling. *Id.* at 788.

Under some circumstances, special masters have justified awarding a higher hourly rate to an expert based on the expert's experience working with the Vaccine Program, which allowed the expert to accomplish tasks in a more efficient manner. *Doe*, 2011 WL 6941671, at *7. ("Special masters have compensated doctors who have testified repeatedly in the Vaccine Program at a relatively high hourly rate because, in part, the doctors' experience allows them to perform some tasks efficiently.").

**Reasonable Hours Expended by Experts:** An expert should be compensated only for the number of hours reasonably expended by the expert. *King*, 2010 WL 5470787, at *4 (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable.'"). The special master's experience and judgment can be brought to bear when making determinations regarding the reasonableness of the number of hours expended by an expert under the circumstances in a particular case. Wasson, 24 Cl. Ct. at 483 (indicating that special masters have broad discretion in calculating fees and costs).

When making determinations regarding the reasonableness of the amount of time that an expert spent on substantive activities in a case, it is relevant to look at the amount of time that an expert with comparable skills would have spent on the task in a comparable case. *Caves v. Sec'y of Health & Human Servs.*, No. 07-443V, 2012 WL 6951286, at *12 (Fed. Cl. Spec. Mstr. Dec. 20, 2012), *aff'd by* 111 Fed. Cl. 774 (July 18, 2013) (indicating that it is assumed that an expert with more experience who commands a higher rate will be able to complete tasks in a more efficient manner).

### a. Fees of Petitioner's Medical Expert, Dr. Tornatore

Respondent objects to the 58.5 hours at an hourly rate of $400.00 per hour that Petitioner seeks for the work done by Carlo Tornatore, M.D. ("Dr. Tornatore"), who was retained by Petitioner to serve as a neurology expert in this case. Respondent's Opposition at 26-27. Respondent contends that the hourly rate and number of hours that Dr. Tornatore billed were unreasonable. *Id.*

**i. Reasonableness of the Hourly Rate for Petitioner's Medical Expert, Dr. Tornatore**

Respondent contends that the $400.00 per hour charged by Dr. Tornatore for work performed in 2009 and 2010 is unreasonable and that Dr. Tornatore's hourly rate should be reduced to $350.00 per hour. Respondent's Opposition at 27. Petitioner provided information on Dr. Tornatore's background and information charged by other fees experts to support the reasonableness of the claimed hourly rate. Pet'r's Memorandum at 19, 20.

Dr. Tornatore is an expert in neurology who is currently working at Georgetown University in the District of Columbia.[26] *Id*. He serves as an Associate Professor and Vice Chairman. Department of Neurology, Georgetown University Hospital and as the Director of its Multiple Sclerosis Center." *Id*. at 19-20. Dr. Tornatore obtained a medical degree from Georgetown University in 1986 and his current work is highly relevant to the medical issues involved in this case, which "involved the issue of transverse myelitis and multiple sclerosis and whether they could be caused by the Menactra vaccine." *Id*.

Furthermore, the information that Petitioner provided regarding the hourly rates charged by a number of neurology experts who have been approached or retained by MCT to provide medical expert opinions demonstrates that the rate charged by Dr. Tornatore was reasonable. *Id*. at 20.

Respondent did not provide comparable information regarding hourly rates for neurology experts. Based on the forgoing information and analysis, Petitioner will be awarded the full hourly rate of $400 per hour for hours that Dr. Tornatore spent performing substantive work (time not spent traveling) on this case in 2009 and 2010.

Dr. Tornatore billed eleven hours for the time that he spent traveling. Invoices at 72. There is no indication that Dr. Tornatore spent travel time working on the case; therefore, it is appropriate to compensate Dr. Tornatore at half of his hourly rate (i.e., $200.00 per hour) during the time spent traveling to and from the hearing. Accordingly, Petitioner's request for attorneys' costs is reduced by $2,200.00.

---

[26] Dr. Tornatore graduated from Cornell University with a bachelor's degree in neurobiology in 1981. *See generally* Pet'r's Ex. 22. He went on to receive a master's degree from the Department of Physiology from Georgetown University in 1982. *Id*. He subsequently received a medical degree in 1986 from Georgetown University. *Id*. After completing his medical residency, Dr. Tornatore spent four years working as a Senior Staff Fellow at the National Institute of Neurological Disorders and Stroke, Section on Molecular Virology and Genetics, Laboratory of Viral and Molecular Pathogenesis, at the National Institute of Health. *Id*.

### ii. Reasonableness of the Time Expended by Petitioner's Medical Expert, Dr. Tornatore

Respondent objects to the 31.5 hours that Dr. Tornatore spent doing an initial review of the case including reviewing medical records and literature and preparing a final report. Resp't's Opposition at 27. Respondent contends that it would have been reasonable for Dr. Tornatore to spend 25 hours on the initial review and drafting the report. *Id.* Given the number of hours Petitioner's counsel spent researching and providing literature to Dr. Tornatore (see supra § IVA2b Reasonableness), the undersigned agrees that Dr. Tornatore's research time appears excessive. Petitioner will be reimbursed for 25 hours for the initial review and drafting by Dr. Tornatore.

Respondent does not question the reasonableness of the hours that Dr. Tornatore spent in connection with the hearing in this case.[27] Therefore, Petitioner is being compensated for the sixteen hours that Dr. Tornatore spent on this case in conjunction with the hearing that was held in San Antonio, Texas.

### b. Fees of Petitioner's Vocational and Life Care Planner, Dr. Patrick

Respondent objects to the $11,275.00 that Petitioner seeks for the services provided by Petitioner's life care planner. Resp't's Opposition. Petitioner retained James Patrick, Ph.D. ("Dr. Patrick"), a Certified Life Care Planner and a Certified Rehabilitation Counselor from Patrick & Associates located in Tallahassee, Florida to serve as a life care planner and vocational rehabilitation expert in this case. Pet'r's Memorandum at 25.

Petitioner contends that the vocational and life care planning services provided by Dr. Patrick "were required to determine likely future damages in the form of lost wages and future medical expenses, because Petitioner was still in nursing school and it had to be determined how having MS would affect her ability to work as a nurse in the future." Pet'r's Memorandum at 26.

### i. Reasonableness of the Hourly Rate for Vocational and Life Care Planner, Dr. Patrick

Respondent objects to the hourly rate charged by Dr. Patrick. Resp't's Opposition at 27. Respondent contends that the $275 per hour that Dr. Patrick charged for vocational and life care planning services performed between 2010 and 2012 was unreasonable given the circumstances of this case. *Id.* Respondent bases this assertion on the fact that "[t]he highest rate awarded to a life care planner in the Vaccine Program appears to be $200.00/hour." *See* Resp't's Opposition at 27; *Torday,* 2011 WL 2680687, at *9-10. Furthermore, Respondent notes that the life care planner in *Torday,* who was compensated at the rate of $200.00 per hour, had "extensive

---

[27] On October 18, 2010, Dr. Tornatore billed 7.5 hours for time that he spent on "[h]earing preparation with attorneys." Invoice at 72. On October 19, 2010, Dr. Tornatore billed 7.5 hours for the "[h]earing and conference with clients" and one hour for a post-hearing meeting with attorneys. *Id.*

experience in the Vaccine Program and was located in a high cost area of California," whereas "Mr. Patrick is located in Tallahassee, Florida, and apparently has limited experience in Vaccine Program cases." Resp't's Opposition at 27. Petitioner contends that several branches of the Department of Justice "previously paid Dr. Patrick the requested rate, [and therefore] it is disingenuous to now claim that such rate is excessive or unreasonable." Pet'r's Memorandum at 26. Respondent in Vaccine Act cases is not the United States Department of Justice, but the United States Department of Health and Human Services; these are distinct agencies. Petitioner's attempt to equate the two for purposes of fee setting is itself disingenuous, and not persuasive.

Dr. Patrick completed his post-graduate studies in life care planning at the University of Florida in 2002.[28] Pet'r's Memorandum at 25-26. In addition to serving as a vocational expert and vocational counselor, Dr. Patrick is an Associate Professor in the Department of Rehabilitation and Community Counseling at Thomas University. *Id.* Dr. Patrick also "owns a private firm that provides life care plans, vocational assessments, case management and rehabilitation plans." *Id.* Dr. Patrick's firm is located in Tallahassee, Florida. *Id.*

Even allowing for inflation, the undersigned agrees with Respondent that the hourly rate requested by Petitioner is excessive for time that Dr. Patrick spent on substantive work in this case (time not spent traveling), performing vocational and life care planning services, between 2010 and 2012, because it is disproportionate to the rate awarded in comparable cases. The undersigned concludes that $237.50 per hour is the appropriate rate for these services.

Petitioner is requesting compensation for twenty-five hours spent traveling. During the time that Dr. Patrick spent traveling, he did not document that any work was performed on this case.[29] Invoices at 89-90. Therefore, the undersigned does not find compensating Dr. Patrick at his full hourly rate for the time spent traveling to be appropriate. Dr. Patrick's hourly rate is reduced by fifty percent for the twenty-five hours that he spent traveling.

Accordingly, Petitioner's costs are to be reduced by $4,506.25.

---

[28] Dr. Patrick graduated from Union College with a Bachelors of Science in Applied Behavioral Analysis in 1984. Dr. Patrick received a Masters of Science in 1986 and a Doctor of Philosophy in 1997 from Florida State University. Dr. Patrick went on to complete a Fellowship at McClain Hospital at Harvard University in 1995. Pet'r's Memorandum at 25.

[29] 09/30/3009 - Travel to client interview – 7 hours ($275.00 / $1,925.00); 10/01/2009 – Travel to client interview: travel to Lubbock to see Erin – 5.5 hours ($275.00; $1,512.50); 10/02/2009 – travel from client interview – 5.5 hours ($275.00 / $1,512.50); 10/03/2009 – travel from client interview: travel back to Tallahassee – 7 hours ($275.00 / $1,925.00). *See* Invoice at 89, Mar. 7, 2013.

### *ii. Reasonableness of the Hours Expended by Vocational and Life Care Planner, Dr. Patrick*

Respondent also objects to the number of hours that Dr. Patrick expended on this case. Resp't's Opposition at 27-28. Respondent asserts that under the circumstances of this case, the hours that were billed for Dr. Patrick's work were unreasonable. *Id.*

Petitioner has requested compensation for sixteen hours of substantive (non-travel) work in this case done by Dr. Patrick. The sixteen hours breaks down into the following activities: consultation interview with doctor (1.25 hours); client interview (2.50 hours); vocational assessment (3.0 hours); life care plan – research and development (5.0 hours); case review / doctor interview preparation (1.0 hours); telephone consultation: coordinating telephone consultation with Dr. Gazda (1.0 hours); telephone consultation: phone communication with Dr. Gazda (0.5 hours); interview with physician (0.75 hours); and life care plan research (0.5 hours). *See generally* Invoice. Dr. Patrick also spent twenty-five hours traveling for which Petitioner seeks compensation. *Id.* Petitioner also submitted documentation that Dr. Patrick spent 1.5 hours on telephone conversations that were not billed and for which compensation is therefore not sought. *Id.*

In response to Respondent's contention that the number of hours billed for Dr. Patrick's services was high in light of the fact that Petitioner never filed a life care plan, Petitioner indicated that "Dr. Patrick worked on a life care plan for Petitioner but such plan was never filed because the parties were able to settle the case at mediation." Pet'r's Memorandum at 27. Petitioner provided documentation of the hours expended by Dr. Patrick, Respondent failed to provide more than conclusory allegations that these hours were unreasonable. The undersigned therefore determined based on the information submitted and her personal judgment that it is reasonable to compensate Petitioner for the hours that Dr. Patrick expended on this case.

### *c. Costs for Payment to Wyatt Partners, L.L.C. for Expert Services Regarding Attorneys' Fees and Costs*

Petitioner submitted an expert report prepared by Steven A. Tasher, Esq. ("Mr. Tasher"), Co-CEO and managing director of Wyatt Partners, LLC ("Wyatt Partners"), which concludes that the rates charged by the MCT attorneys were reasonable. *See* Pet'r's Ex. 56.

Respondent objects to the $13,647.25 that MCT seeks to compensate Wyatt Partners. Resp't's Opposition at 28. Petitioner acknowledges that prior decisions regarding the reasonableness of fees have not been based on the type of expert report that Petitioner submitted; however, Petitioner asserts that "the failure to diligently present evidence in support of hourly rates by other attorneys in prior cases, and the rates awarded in those cases, should not be binding on MCT attorneys, but rather their hourly rates should be evaluated on a case-by-case basis according to the evidence presented" by Petitioner. Pet'r's Memorandum at 6 n. 3, Mar. 7, 2013. Respondent questions "the reasonableness of using Wyatt Partners for expert services on the fees issue in this case, in light of their lack of familiarity with the Program, their lack of familiarity with the location where the services by the MCT attorneys were rendered (Florida and the forum), and the conclusory nature of the expert report." *Id.*

As discussed in the Section above titled "Reasonableness of Hours Expended by the MCT Attorneys on Fees Motions," Petitioner's request for an award for Wyatt Partners is denied in its entirety because the decision to retain Wyatt Partners was not reasonable. The information contained in the expert report that was submitted from Wyatt Partners demonstrates their lack of familiarity and expertise with litigation in the Program.[30] For example, while Mr. Tasher's report emphasizes the complexity of the case as evidence to support the reasonableness of the MCT attorneys' hourly rates, the challenges that are presented to attorneys in vaccine litigation are reflected in the reasonable number of hours expended portion of the lodestar calculation, not the reasonable hourly rate portion of the lodestar calculation as Mr. Tasher's report suggests. *Rodriguez,* 632 F.3d at 1385-86. Furthermore, the decision to obtain an expert to opine on attorneys' fees amounts to a "second major litigation" regarding fees, which is inappropriate. *Chen Bou,* 2007 WL 924495, at *20 (quoting *Hensley,* 461 U.S. at 436). The undersigned therefore finds that Petitioner should not be compensated for the costs associated with retaining Wyatt Partners to write an expert report. Accordingly, the award of costs is reduced by $13,647.25.

Respondent also argues that the hourly rate and the number of hours spent by Wyatt Partners were unreasonable.[31] Resp't's Opposition at 28. Because the undersigned has denied the Wyatt Partners Fees and Costs in their entirety, these issues are moot.

### 2. Reasonableness of the LexisNexis Research Charges that the Attorneys from MCT Accrued During the Course of Litigation

Respondent objects to the $777.66 that Petitioner seeks for LexisNexis legal research performed from September 2012 through December 2012, in support of her request for attorneys' fees and costs.[32] Resp't's Opposition at 28.

---

[30] *See generally* Pet'r's Ex. 56.

[31] Furthermore, Respondent questioned how Petitioner arrived at the total cost for the work of the fees experts employed by Petitioner, Steven A. Tasher and Lindsay H. Tasher at Wyatt Partners, LLC. Resp't's Opposition at 28. Respondent noted that Petitioner seeks $13,647.25 in costs for the services of Wyatt Partners, LLC, but that the invoices indicate that the work performed by Mr. Tasher and Ms. Tasher should total only $11,861.25 based on the stated hourly rates and number of hours worked by each individual. *Id.* In the submitted response, Petitioner addressed the discrepancy noted by Respondent, indicating that the "$1786.00 discrepancy is the result of Petitioner's omission of Mr. Tasher's invoice for time spent in February from the Revised Fee Application." Petitioner apologized for the omission and attached the invoice to her reply as Exhibit 62. Pet'r's Memorandum at 27; Pet'r's' Ex. 62 (invoices).

[32] Respondent does not object to the $166.03 in Westlaw costs that were incurred earlier in the course of litigation. Resp't's Opposition at n. 11.

Petitioner initially failed to provide invoices for the LexisNexis research expenses, but in response to Respondent's objection, Petitioner provided the invoices.  *See* Invoices at 54, Mar. 7, 2013; Pet'r's Ex. 63 (LexisNexis invoices from September through December 2012).Respondent continued to question the reasonableness of the costs for the LexisNexis legal research even after the invoices were provided.  Resp't's Opposition at 29.

The LexisNexis invoices that Petitioner provided outline the billing of each attorney on a given date, but the research description is often left blank, for example, stating that there is "[n]o Research Description."  Pet'r's Memorandum at 63. Other times the description is generic.  For example, some of the descriptions use the phrase "fees dispute."  *See generally Id*.

Under the Vaccine Act, petitioners can be reimbursed for fees associated with performing research on the computer regarding the claims at issue in the case.  *English,* 2006 WL 3419805, at *15; *Dunham*, 18 Cl. Ct. at 645.  Although motions for attorneys' fees should not evolve into a "second litigation," and the purpose of the research charges should have been set forth with more specificity, the undersigned concludes that some research concerning attorneys' fees was warranted especially in light of the fact that the retention of an expert in this area was unwarranted.  The LexisNexis fees are therefore allowed.

## V

## CONCLUSION

In sum, the table below includes the amounts of attorneys' fees and costs and Petitioner's costs that the special master awards Petitioner:

### Table A:  Attorneys' Fees and Costs

| | |
|---|---|
| Attorneys' Fees Requested | $ 139,704.45 |
| Reductions | $ 15,022.55 |
| **Attorneys' Fee Award** | $ 124,681.90 |
| | |
| Attorneys' Cost Requested | $ 65,428.71 |
| Reductions | $ 20,353.50 |
| **Attorneys' Costs Awarded** | $ 45,075.21 |
| | |
| **Total Attorneys' Fees and Costs** | $169,757.11 |

### Table B:  Petitioner's Costs

| | |
|---|---|
| **Petitioner's Costs Requested** | $2,380.92 |
| **Reductions** | $0.00 |
| | |
| **Total Petitioner's Costs Awarded** | $2,380.92 |

Accordingly, the undersigned hereby awards

A. A payment of **$169,757.11**, representing reimbursement for attorneys' fees and costs in the form of a check payable jointly to Petitioner and Petitioner's counsel, Anne Carrión Toale;

B. A payment of **$2,380.92**, representing reimbursement for Petitioner's costs, in the form of a check payable to Petitioner.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[33]

**IT IS SO ORDERED.**

/s/ Lisa D. Hamilton-Fieldman
Lisa D. Hamilton-Fieldman
Special Master

---

[33] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.